MORRIS HANNAH, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

### Kansas City Court of Appeals, May 29, 1899.

1. **Railways**: DEFINITIONS: STREET RAILWAY. Primarily a street railway is one constructed on and along the streets for the carriage of persons from one point to another in a city with cars stopping at short intervals for the receipt and discharge of passengers. But a railroad constructed in the country and without regard to roads for a distance of ten miles for transporting persons from one city to another is rural rather than urban though it confines its business to carrying passengers only and is operated by a street railway company.

2. **Railroads**: STREET RAILWAY: FRANCHISE: FENCING. The defendant in this case in operating its electric line from Kansas City to Independence is the successor and purchaser of the rights and franchises of a company organized under the general statutes, and as such is required to erect and maintain fences under section 2611, Revised Statutes 1889, although its motive power has been changed to electricity, and it carries passengers only.

*Appeal from the Jackson Circuit Court.*—HON. E. P. GATES, Judge.

AFFIRMED.

D. B. HOLMES, CLEMENT A. LAWLER, KARNES, HAGERMAN & KRAUTHOFF for appellant.

(1) A street railway is not a railroad within the meaning of section 2611 of the Revised Statutes of Missouri. R. S., ch. 42, art. 2, sec. 2611; Railroad v. Railroad, 2 Duv. (Ky.) 175, 178; Booth on Street Railways, p. 2, sec. 1; Williams v. Railway, 41 Fed. Rep. 556, 557; 23 Am. and Eng. Ency. Law, 941; Trust Co. v. Railway, 68 Fed. Rep. 82; Railway v. Johnson, 25 Pac. Rep. 1084, 1085; 2 Wash. 112; Beach Private Corporations, sec. 403; Funk v. Railway, 63 N. W. Rep. 1099; 61 Minn. 435; Cable Co. v. Johnson, 25 Pac. Rep. (Wash.) 1084; 2 Wash. 112; Appeal of Montgomery, 20 Atl. Rep. (Pa.) 399; 136 Pa. St. 96. (2) Generally, it may be stated that street railways are not considered as railroads unless there is some particular reason for saying that the legislature intended differently. 2 Rorer on Railroads, 1422; Elliott on Roads and Streets, 558; Bridge Co. v. Railroad, 114 Pa. St. 478, 484, 485; Isaacs v. Railroad, 47 N. Y. 122, 124. Many instances exist where a street railway has been held not to be a railroad within the meaning of certain statutes. Erb v. Morasch, 56 Pac. Rep. (Kan.) 133; Railroad v. Railroad, 63 Wis. 93, 98, 99; Moneypenny v. Railroad, 4 Abb. Pr. (N. S.) 357; Lax v. Railroad, 46 N. Y. Super. 448; In re Dist. Railroad Co., 107 N. Y. 42, 53, 54; Cable Co. v. Mayor, 104 N. Y. 114; People v. Newton, 112 N. Y. 396, 401, 405; Ferguson v. Sherman, 116 Cal. 169; 47 Pac. Rep. 102; Newell v. Railway, 35 Minn. 112; 27 N. W. Rep. 839. (3) Section 2611, being in derogation of the common law and penal in character, is to be strictly construed. Dudley v. Telegraph Co., 54 Mo. App. 391; State v. Gritzner, 134 Mo. 512, 527; State ex rel. v. Railway, 19 Mo. App. 104;

Connell v. Telegraph Co., 108 Mo. 459; State v. McLain, 49 Mo. App. 398; Wilson v. Railroad, 60 Mo. 184; Rozelle v. Harmon, 103 Mo. 339.

L. T. DRYDEN for respondent.

(1)   Defendant's electric line between Kansas City and Independence, Missouri, is not a street railway, but a railroad. Katzenberger v. Lawo, 90 Tenn. 235; s. c., 25 Am. State Rep. 683.   (2)   The law of Missouri recognizes no distinction between the terms "railway" and "railroad," but regards them as synonymous terms, and the courts use the terms interchangeably.   Railroad v. Railway, 2 Mo. App. 75; Railway v. Clark, 121 Mo. 169; Radcliffe v. Railway, 90 Mo. 127. (3)   The language and provisions of section 2611, R. S. 1889, are broad enough to include defendant's electric line between Kansas City, Mo., and Independence, Mo., even though it were a street railway, especially under the admitted facts in this case.   Rafferty v. Central Traction Co., 30 Am. St. Rep. 764; Bloxham v. Railroad, 51 Am. St. Rep. 44; also 147 Pa. St. 579; 36 Florida, 519; Jerman v. Benton, 79 Mo. 153.   We call particular attention to this latter case.   (4)   The duty of a railway company to fence where its road passes through uninclosed lands, is imposed upon it for the benefit of the general public, and not for adjoining owners only.   Jackson v. Railway, 43 Mo. App. 325.   (5)   The law requires railroads to fence at every point not required for other public uses. Ells v. Railroad, 48 Mo. 231; Kirkland v. Railroad, 82 Mo. 466; Radcliffe v. Railway, 90 Mo. 133; Railway v. Clark, 121 Mo. 183; Brandenburg v. Railway, 44 Mo. App. 224.   (6) This remedy provided for is not alone penal but also compensatory and a "fundamental rule which governs courts in the interpretation of statutes requires them to give such construction as shall in the most complete manner effect the known purpose and object of the statute."   Seaton v. Railroad, 55 Mo. 416; Parish v. Railroad, 63 Mo. 286; Silver v. Railroad, 78 Mo. 533.

GILL, J.—The defendant operates an electric railway line between Kansas City and Independence, and the question is, whether or not it is answerable in double damages for stock escaping onto the track and killed where the right of way is unfenced. It is conceded that plaintiff's mare strayed upon the tracks of the road at a point about half way between Kansas City and Independence, and was there run over and killed by one of defendant's electric cars. It is also admitted that the place where the mare got upon the track was such that it ought to have been fenced, if section 2611 of our corporation statute applies. On a trial by the circuit court, without a jury, the defendant was held liable for double the value of the animal killed and an appeal was taken to this court.

The statute in question provides, that "every railroad corporation formed or to be formed in this state, and every corporation formed under this article, or any railroad corporation running or operating any railroad in this state, shall erect and maintain lawful fences on the sides of the road where the same passes through, along or adjoining inclosed or cultivated fields or uninclosed lands," etc., and then provides that for a failure to so fence, the corporation shall be liable for double the amount of damages resulting from such failure. The point for decision here is, whether or not, under the circumstances, the defendant is amendable to the provisions of this statute.

We have been furnished by defendant's counsel with an elaborate brief and argument contending that the Metropolitan Street Railway Company is not bound to fence its right of way, because it is not a railroad corporation within the meaning of said section 2611; that it is a street RAILWAYS: defini- railroad company as distinguished from an ortions: street dinary railroad, which, and only which, was intended by that act. We are not disposed to take issue with counsel as to the mere definition of terms. It may be conceded that the defendant is ordinarily engaged

in the construction and operation of street railways, that such street railroads are not required to be fenced; in other words, that the statute above quoted has no application to street railways, and yet the defendant may be held liable under the peculiar facts of this case. For it seems to us that the ten miles of road operated by defendant between these two cities can hardly be classed as a street railroad, but comes under the designation of railroad mentioned in section 2611, and which is required to be fenced. A street railway has been variously defined. As the name indicates, the primary meaning of street railway, or street railroad, is one constructed and operated on and along the streets of a city or town for the carriage of persons from one point to another in such city or town or to and from its suburbs. It is peculiarly an institution for the accommodation of people in cities or towns; its tracks are ordinarily laid to conform to street grades; its cars run at short intervals, stopping at street crossings to take on and discharge passengers, and in its business is confined to the carriage of passengers and not freight. Booth on St. Rys., sec. 1; Elliott on Roads & Streets, p. 557; Williams v. Railway, 41 Fed. Rep. 556; Funk v. Railway, 61 Minn. 435.

The road in question is quite a different thing from that just described. It is not strictly local in its character; it is not used to carry passengers from corner to corner, or from one section or portion of a city to another, or to transport persons from "down town" to and from the suburbs; it pays little attention to streets and roads but takes its course through the country just as any other railroad. It is a means of transporting persons from one city to another—its western terminus being at or near the eastern limits of Kansas City, and its eastern terminus the public square at Independence. It is *rural* rather than *urban*. It receives and discharges passengers at regular stations or depots much after the fashion of

ordinary railroads passing through the country. The evidence, it is true, shows that as operated when plaintiff's mare was killed, this road did not carry freight but only passengers, but, as we shall presently see, it has authority to transport property as well as people.

The road in question is the successor (by purchase under foreclosure of a mortgage) of the Kansas City, Independence & Park Railway Company, which was organized and incorporated under the general railroad laws of the RAILROADS: street state for the purpose of constructing, maintaining and operating a railroad between the city of Independence and Kansas City, and for the carriage of both persons and property. Said Kansas City, Independence & Park Railway Company did acquire the right of way, and did construct and operate thereon a narrow gauge railroad through the country and farm lands from Independence to Kansas City. The defendant's predecessor was then, clearly, a railroad corporation as provided for, regulated and named in our statute governing railroads, and it constructed, maintained and operated a railroad within the meaning of that statute. It must be conceded also, that said Kansas City, Independence & Park Railway was subject to and amendable to the provisions of article 2, chapter 42, under which it was organized and its franchises secured, and was bound to fence its right of way where it passed through the rural district between the two cities.

Under the deed executed by the special master in the foreclosure suit, there was conveyed to the defendant, "the railroad, premises, property and franchises" of the said Kansas City & Independence Company. The defendant then became subrogated to all the rights of its vendor, and along with the "railroad, premises, property and franchises" thus acquired, said Metropolitan Company assumed the obligations pertaining thereto, among which was to maintain and operate

said railroad and to observe also the statutory regulations required for the protection of stock along the road and guard the safety of the traveling public, that is, maintain fences along its right of way to the like extent as required of its predecessor. As to said road then, maintained and operated between Kansas City and Independence, the defendant became a "railroad corporation running or operating a railroad in this state," and was legally bound under section 2611 to "erect and maintain lawful fences on the sides of the road where the same passes through, along or adjoining inclosed or cultivated fields or uninclosed lands."

That defendant has changed the motive power from steam to electricity can make no difference; it still remains a railroad within the meaning of the act. Booth on St. Rys., sec. 1, and notes. The law was intended as a protection to stock and to human life. The change from steam power to electricity may lessen the chances for accident, but, as the present case shows, has not rendered the operation of the road entirely safe. The danger still remains, though possibly in a less degree.

We approve the action of the lower court and its judgment will be affirmed.