## Mills v. Commonwealth.

(Decided November 24, 1931.)

J. B. CAMPBELL and TUGGLE & TUGGLE and R. L. POPE for appellant.

J. W. CAMMACK, Attorney General, and DOUGLAS C. VEST for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Edward Mills, who was jointly indicted with his father, Marshall Mills, for the murder of Jess Baker, appeals from a judgment convicting him of manslaughter, and fixing his punishment at 21 years' imprisonment.

The principal witness for the commonwealth was Oliver Baker, the ten-year-old son of the deceased. Oliver's account of the homicide is as follows:

On the night previous to the homicide, he and his father rode a mule to the home of Bill Mills, a brother of Marshall Mills, the father of appellant. They put the mule in Bill Mill's stable, and slept there until daylight. After having breakfast with Bill Mills, they went to a still site some 300 or 400 yards away, accompanied by Bill Mills. They then made preparation for the operation of the still, and shortly thereafter Bill Mills left. Later on Jess Baker lay down, and apparently went to sleep. While in this position, some one, whom Oliver did not see, fired upon his father. As soon as the shooting started, he ran and told some of his relatives what had occurred. When he and his father went to the still his father had a watch, but did not have a gun. If his father had any money, he did not know. Later on, the body of Jess Baker was found at the still site. He had been shot in the head, and the bullets ranged from the back of the head toward the front. There were also shots in his face, which apparently came through his head. There were other shots in his hand ranging from his first finger towards his little finger. There were also several buckshots in his thigh, which apparently came

out in front. Two or three witnesses gave it as their opinion that the wounds in the head of the deceased were from a gun of a smaller caliber than those in his thigh. Near and by the side of the body were pools of blood, also the hat and coat of the deceased. Between his thigh and arm was found a pistol containing two empty cartridge hulls, and two loaded cartridges. In the pockets of the deceased were found forty cents and a watch chain. Mrs. Ada Baker, wife of the deceased, testified that Marshall Mills, father of appellant, and her husband had been making liquor together, and that on Saturday before the homicide, which occurred on Monday, Marshall Mills came to her home and asked her where Jess was. She told him Jess was at Pineville, and had not come home, and he said, "Jess took off six gallons of liquor of his'n, and he done him dirty." At that time there was no one with Marshall Mills. She also testified that her husband had $42 and a watch when he left home the morning of the homicide, but the watch was not on him when he was brought back. She did not know what kind of a gun her husband had. He did not have any at home. Frank Messer testified that he saw deceased with a large roll of money on Saturday before the homicide. John Baker testified that he sold the gun found at the side of the deceased to Marshall Mills, appellant's father, about 20 days before the homicide.

According to appellant, he and his father, Marshall Mills, left their home about 9:30 on the morning of the homicide and went to the home of Bill Mills to look at a field of fodder which belonged to a daughter of Marshall Mills. Marshall Mills took with him a single barrel, 12-gauge breech-loading shotgun, thinking he might be able to kill some squirrels. After going to the cornfield, they decided to save the fodder, and to go by the home of Bill Mills and advise him of that fact. In doing this, they went in a different direction from the way they had come. When they came around the top of the mountain where it was necessary for them to turn down the opposite side in order to reach the home of Bill Mills, they saw some smoke down the mountain side, and inquired of each other what it meant. The mountain was very steep, except a small bench or flat below them. In going down the mountain side, Marshall Mills was in front, and appellant was some five or six steps behind him. When they reached the small flat bench below, they discovered the still, and the deceased, Jess Baker, was sit-

ting within three or four feet of it. Oliver Baker was about 50 yards above the still breaking and gathering dry sticks. When they came within about 25 yards of the deceased, the deceased began cursing, and Marshall Mills said, "Jess, what is the matter?" Jess then scrambled to the right behind some bushes, and immediately threw his pistol on Marshall Mills and fired a shot that hit the flap of the front right-hand pocket of Marshall Mills. When the deceased fired the first shot, Marshall Mills dropped to his knees, and appellant, thinking that his father had been shot, turned and ran away. The deceased then fired another shot, and appellant heard the report of the shotgun. Appellant ran to the home of his uncle, Jim Mills, and reported that Jess Baker had fired at his father, that his father had also fired in the direction of Baker, and that he saw his father fall over, and thought he was killed. Jim Mills was not at home, but he got his aunt, Jim Mills' wife, to go back in the woods with him in search of his father. When they had gone but a short distance, they met his father coming out of the woods. His father then gave himself up, and appellant went to his home, where he was arrested some two or three days later. While in company with his father at the time of the homicide, appellant was unarmed. There was further evidence that the wounds in the head of the deceased could not have been caused by the entry of the bullet from the rear side, and that the deceased had been seen with a gun in his possession prior to the homicide. At the time of the trial, appellant's father was in the penitentiary, and appellant did not have the benefit of his evidence.

In view of the conclusion of the court, we deem it unnecessary to determine whether the evidence was sufficient to take the case to the jury, or to sustain the verdict.

Though jointly indicted with his father, appellant was tried separately. The indictment did not charge a conspiracy, and none was proved. That being true, Ada Baker's evidence to the effect that Marshall Mills and her husband were engaged in making liquor, even if she had personal knowledge of that fact, and her further evidence that on Saturday previous to the homicide Marshall Mills, appellant's father, said in her presence, but not in the presence of appellant, that her husband took off six gallons of liquor of his, and had done him dirty, though admissible to show motive on the part of

the father, was not admissible against appellant. Howard v. Commonwealth, 220 Ky. 585, 295 S. W. 888. Since, without this evidence, there was no evidence showing any hostility on the part of appellant toward the deceased, or any motive for the crime, its admission was clearly prejudicial.

We refrain from deciding whether the court abused a sound discretion in allowing only 30 minutes a side for argument.

For the reason given, the judgment is reversed and cause remanded for a new trial consistent with this opinion.