Roy POWELL, Plaintiff-Appellant,

v.

ST. LOUIS COUNTY, Missouri; and Title Insurance Corporation of St. Louis; and Union Electric Company; and Terminal Railroad Association of St. Louis, Defendants-Respondents.

No. 54092.

Supreme Court of Missouri, Division No. 1.

Nov. 10, 1969.

Edwin Rader, Paul H. Schramm, Clayton, for appellant.

Joseph B. Moore, St. Louis County Counselor, Clayton, for respondent, St. Louis County.

George P. Mueller, St. Louis, for respondent, Terminal Railroad Ass'n of St. Louis.

C. Kenneth Thies, Kerth, Thies, Schreiber & Hamel, Clayton, for respondent, Union Electric Co.

Jesse E. Bishop, Bishop & Goodman, St. Louis, for respondent, Title Insurance Corp.

WELBORN, Commissioner.

Action to quiet title to real estate. Suit was brought by plaintiff-appellant, Roy Powell, claiming to be owner of portion of tract of land formerly used for railroad purposes. Powell owned land adjoining land in question and claimed ownership on grounds that railroad acquired only an easement and that, upon cessation of use for railroad purposes, he, as abutting owner, became owner free from railroad's easement.

On March 11, 1902, Della V. Watson and her husband executed a general warranty deed to John F. Lee and James Y. Lockwood. The deed, omitting a portion of the premises and the conclusion, read as follows:

"That the said parties of the first part, in consideration of the sum of Thirty-Three Hundred Dollars ($3300.00) the receipt of which sum is hereby acknowledged, do by these presents GRANT, BARGAIN, SELL, CONVEY AND CONFIRM unto the second parties, as joint tenants and not as tenants in common, the survivor of them, and the heirs and assigns of the survivor of them, the following described lots, tracts or parcels of land, lying, being and situate in the County of St. Louis, State of Missouri, and in United States Survey 2476, Township forty-six (46) Range six (6) East, the centre line of which tract is described as follows, towit:

"Beginning in East line of said United States Survey twenty-four hundred and seventy-six (2476) at Station two hundred and seventy-five (275) plus seventeen (17) of the route of the Central Belt Railway Company as surveyed through the lands of said first parties, which is sixty (60) feet south of Maline Creek, thence with one degree curve to left, to Station two hundred and seventy-eight (278) plus seventy-one and four tenths (71.4) of said Survey; thence South sixty-five (65) degrees thirty-nine (39) minutes west to Station two hundred and ninety-six (296) plus twenty-nine and five tenths (29.5) of said Survey; thence with two degrees curve to left to Station two hundred and ninety-six (296) plus ninety-eight (98) of said Survey in West line of said Watson tract, at point one hundred and thirty-seven (137) feet south of Maline Creek.

"From said Station two hundred and seventy-five (275) plus seventeen (17) to Station two hundred and seventy-nine (279) said tract is fifty (50) feet wide on the north side of said centre line, and one hundred and fifty (150) feet on South side; from Station two hundred and seventy-nine (279) of said Survey to Station two hundred and eighty-nine (289), said tract is fifty (50) feet wide each side of said centre line; from Station two hundred and eighty-nine (289) to Station two hundred and ninety-five (295) it is fifty (50) feet wide on the north side of said centre line, and one hundred and fifty (150) feet on the South side; from Station two hundred and ninety-five (295) to Station two hundred and ninety six (296) plus ninety-eight (98) said strip is fifty

(50) feet wide on each side of said line; said tract contains seven and thirty hundredths (7.30) acres, more or less.

"A map of the route of the Central Belt Railway Company's proposed railroad, as surveyed through the land of the said first parties, certified by W. K. Kavanaugh as President, and B. E. Johnson, as Chief Engineer, of said Railroad Company, and showing the aforesaid strip as above described, has been heretofore filed in the office of the Clerk of the County Court of said County of St. Louis, and is hereby referred to for such further description of the land herein conveyed as may appear therefrom.

"Within sixty (60) days after a Railroad shall be built and put in operation along said strip, at least one farm crossing shall be built by the Railroad Company at a point on said strip to be selected by said Henry R. Watson and approved by the Manager of said Railroad; and within said time the Railroad Company shall erect at a point to be selected by said Watson and approved by the Manager of said road, and maintain for a period of three years on said strip a platform and shelter shed or station, at which all local passenger trains during said period shall stop upon being flagged.

"TO HAVE AND TO HOLD THE aforesaid premises of seven and thirty hundredths (7.30) acres, more or less, and all rights, privileges, appurtenances and immunities thereto belonging, or appertaining, unto the said second parties as joint tenants and not as tenants in common, and unto the survivor of them and the heirs and assigns of such survivor; said first parties hereby convenanting that they will warrant and defend the title to said premises unto the said second parties and their legal representatives forever against the lawful claims and demands of all persons whomsoever."

Lee and Lockwood were directors and agents of the St. Louis Belt and Terminal Railway Company and took the deed in such capacity. By deed in December, 1902, they conveyed the property to the railway company. Railroad tracks were constructed over the property. Sometime prior to 1938, the railroad ceased to operate over the tracks and the tracks were removed.

Powell, as the owner of abutting property along some 629.5 feet of the 2200-foot length of the 7.30-acre tract, brought this action, claiming to own the southern half of the tract insofar as it adjoined his property. His action was against St. Louis County. St. Louis County had acquired the 7.3-acre tract from Union Electric Company by deed dated November 5, 1958. The tract had been conveyed to Union Electric by general warranty deed of the same date from Terminal Railroad Association of St. Louis, which had, in turn, acquired the tract from St. Louis Belt and Terminal Railway by deed dated December 3, 1953. Union Electric, Terminal Railroad and Title Insurance Corporation of St. Louis intervened as defendants in the cause.

The case was submitted on an agreed statement of facts. The trial court found that Powell had no interest in the property and quieted title in St. Louis County, subject to an easement reserved by Union Electric in its deed of November 5, 1958. Powell appealed.

■ The sole contention of appellant is that the interest conveyed by the Watsons by their 1902 deed was an easement only and that the trial court erroneously found that it conveyed a fee simple title. There is no doubt that the 1902 deed was sufficient, under the rules laid down in Coates & Hopkins Realty Company v. Kansas City Terminal Railway Company, 328 Mo. 1118, 43 S.W.2d 817, to convey a fee simple title, although the conveyance was for railroad purposes. The deed, by its terms, was a general warranty deed. A valuable consideration was paid the grantor. The stated consideration of $3,300 for a 7.3-acre tract is proved by the terms of the deed. Anderson v. Cole, 234 Mo. 1, 136 S.W. 395,

396 [3]; Brown v. Weare, 348 Mo. 135, 152 S.W.2d 649, 653 [6], 136 A.L.R. 286. The deed contains no specific limitation on the quantum of title conveyed. Appellant does not contend that the provision of the deed respecting the farm crossing and passenger shelter is a condition of the conveyance, limiting the estate conveyed, although he does contend, as we will consider below, that the provision, coupled with other provisions of the deed, evidences an intention to restrict the quantum of title conveyed.

The essential contention of appellant is that any deed for railroad purposes which reveals that the property conveyed is "to be used as and for a roadbed over which tracks would be laid for purposes of running trains over" conveys only an easement, or a right of way. In making this contention, appellant relies primarily upon the recent decision of this court in Schuermann Enterprises, Inc. v. St. Louis County, Mo., 436 S.W.2d 666.

The decision in Schuermann was premised upon the language of the deed there before the court. As the court pointed out (436 S.W.2d 668 [3]), that deed "expressly limited the interest conveyed to a right of way. The quantum of interest conveyed is first stated as 'a strip of ground or right of way.' Any ambiguity in the use of 'or' is immediately dispelled by the recital and metes and bounds description of 'said second party's right of way.' Ultimate express limitation of the interest conveyed is provided by the certificate of the grantee railroad's chief engineer that the metes and bounds description 'correctly represents the Right-of-way described in deed from St. Louis University to St. Louis Belt and Terminal Railway.' The purpose of the acquisition was to construct and operate a connecting line between two existing railroads, and that was the only use made of the land; the grantee railroad constructed no elevators, warehouses, or other permanent facilities on the land in question which would be inconsistent with ownership of an easement only."

The opinion does refer to the use actually made, but the significance of such evidence was viewed in the light of the terms of the deed. Incidentally, the agreed statement of facts in the present case is silent as to the use made of the strip here involved, except that it does state that railroad tracks were constructed on the tract.

■ The absence of any reference in the deed here involved to the interest conveyed as right of way distinguishes such deed from that involved in Schuermann. From the deed itself in Schuermann "the intent to pass a less estate (than all the estate of the grantor) * * * expressly appear[ed] * * *." Section 442.460, RSMo 1959, V.A.M.S. Here, if a similar limitation is to be imposed, it must "be necessarily implied in the terms of the grant," an express limitation not being involved. Section 442.460, supra. We find no such necessary implication from the fact that the use of the land contemplated by the parties to the deed and the actual use made of the property was the location of a railroad roadbed. The language of the deed imposes no limitation upon the grantees' use of the property. The covenants relied upon as indicating that the land was to be used for railroad purposes relate only to the obligation of the grantee in the event that a railroad was constructed on the land.

Appellant argues that to distinguish this case from Schuermann on the grounds that the deed in Schuermann by its terms conveyed a right of way whereas the deed in this case contained no such reference would subordinate the recognized public policy of this state (Schuermann, supra, 669 [4]) to semanticism. The construction of deeds, under the statute above referred to, necessarily involves attention to the language of the instrument involved. A grant of a right of way by its terms shows an intention to part with less than the fee. The use of such language is sufficient to distinguish a deed employing that terminology from an unconditional grant of land even though the property is to be used

for construction of a railroad. See Tallman v. Eastern Illinois & Peoria R. Co., 379 Ill. 441, 41 N.E.2d 537, and Keen v. Cleveland C., C. & St. L. R. Co., 392 Ill. 362, 64 N.E.2d 499.

Judgment affirmed.

HOUSER, C., not sitting.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

SEILER, P. J., HOLMAN, J., and GREEN, Special Judge, concur.

STORCKMAN, J., absent.